UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALLY WIESMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 08-40060-FDS |
| | ) |
| ROBERT HILL, BOB PACETTI, ROGER THUOT, and the FITCHBURG HOUSING AUTHORITY, | ) ) ) |
| | ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS
BY DEFENDANTS HILL, PACETTI, AND THUOT**

**SAYLOR, J.**

This is an action by a resident of a public housing project, alleging various claims arising out of a denial of her request to transfer to a different apartment. Plaintiff Sally Wiesman, proceeding *pro se*, alleges that defendants Robert Hill, Bob Pacetti, Roger Thuot, and the Fitchburg Housing Authority violated the law when it refused her request to transfer her to another apartment within her building. Wiesman alleges claims for violations of the Americans with Disabilities Act, the Fair Housing Act, and Housing and Urban Development regulations, as well as state law claims for negligence, nuisance, and breach of the covenant of quiet enjoyment.

The individual defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted in part and denied in part.

**I.    Factual Background**

For purposes of a motion to dismiss, the Court will take the factual allegations in the

complaint as true, drawing every reasonable inference in plaintiff's favor.[1]

Sally Wiesman was a tenant at the Daniel Heights Complex, a housing project operated by the Fitchburg Housing Authority. She suffers from multiple disabilities, including multiple sclerosis, depression, anxiety, and post-traumatic stress disorder. Robert Hill, Bob Pacetti, and Roger Thuot are employees of the Housing Authority. Hill is the Housing Authority's executive director; Thuot is the Daniel Heights building manager.[2]

Between June 15, 2007, and August 22, 2007, Wiesman filed four written complaints with the Housing Authority concerning what she believed was excessive noise, defamation, and harassing behavior by her downstairs neighbor, Genevive Gowell. In addition, on August 8, 2007, she filed a complaint and request for temporary restraining order against the Housing Authority in Worcester Housing Court. A hearing on that request was set for September 14.

On August 24, she received a notice that another tenant in the building (according to the complaint, a "close friend" of Ms. Gowell) had filed a complaint against her with the Housing Authority. On September 6, she met with Thuot to discuss the complaint filed against her; during the meeting, Thuot "suggested that [she] drop the complaint that she had filed with the Worcester Housing Court." (2d Am. Complt. ¶ 11). She did so that day.

On November 11, Wiesman filed a request with the Housing Authority for transfer to another apartment. She apparently contended that her disabilities would be alleviated by a move

---

[1] The Court has considered both the complaint itself and certain documents referred to in its text. Documents whose existence and contents were alleged in the complaint, and whose authenticity is not disputed, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. *See Beddall v. State St. Bank & Trust, Co.*, 137 F.3d 12, 17 (1st Cir. 1998); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[2] The complaint does not indicate Pacetti's title or position.

2

to a different apartment, away from her current neighbors, with whom she did not get along. There were four to five apartments open at the time; she contends that the apartment she preferred had been open for four months. On November 27, the Housing Authority denied the request.

At some point, she submitted letters from a psychiatrist and a neurologist to the Housing Authority. The letter from her psychiatrist is dated June 20, 2007, and addressed "To Whom It May Concern"; it states that she has been diagnosed with major depression and panic disorder and that "[a]ny efforts to reduce her overall level of environmental stress would be helpful in alleviating her condition." The letter from her neurologist is dated August 28, 2007, and addressed to "Fitchburg Housing Authority – Attn: Roger Thuot"; it states that she has multiple sclerosis and that "[i]t is important for [her] to avoid stressful situations, as stress can exacerbate her depression, anxiety and neurologic symptoms."

Wiesman contends that she requested a copy of the Housing Authority's "transfer qualifications and guidelines," but her request was "minimized and ignored." She also requested a copy of its grievance procedure and requested to meet with the Housing Authority's executive director, Robert Hill; both requests were ignored.

On January 29, 2008, Wiesman gave a 30-day notice to vacate "to avoid further emotional distress."

## II. Procedural Background

Plaintiff's second amended complaint alleges (1) "willful, malicious, and knowing" violations of the Fair Housing Act (also known as Title VIII of the Civil Rights Act), the Americans with Disabilities Act (ADA), and "HUD," for denying her transfer request, (2)

3

negligent and reckless violation of the ADA for ignoring her complaints about the harassment from her neighbor, (3) breach of the covenant of quiet enjoyment, (4) common law negligence, and (5) nuisance. In essence, she contends that the law entitles her to a transfer for "good cause." The three individual defendants have moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6).

**III.   Analysis**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008); *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007)). "A plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965. Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi*, 513 F.3d at 305 (*quoting Centro Medico del Turabo*, *Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)). *Pro se* plaintiffs, however, are held "to less stringent standards" than the formal pleadings of lawyers. *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Baxter v. Conte*, 190 F. Supp. 2d 123, 126 (D. Mass. 2001).

**A.   Claims against Defendants Hill and Pacetti**

Plaintiff makes no specific allegations of any act or omission by defendants Hill or Pacetti. Hill is mentioned in paragraph 8 as a defendant in the Housing Court action; the only other

4

reference to either Hill or Pacetti is in paragraph 18, which is set forth below verbatim:

> Sally Wiesman requested grievance procedure and a meeting with executive director, Robert Hill - as instructions stated in her lease agreement. In addition, were directed by Roger Thuot and Bob Pacetti. Requests made by Plaintiff were ignored.

That is not sufficient to state a claim upon which relief can be granted as to Hill or Pacetti. Accordingly, all claims against defendants Hill and Pacetti will be dismissed.

### B.    Claims against Defendant Thuot

#### 1.    Claims under the ADA

Plaintiff alleges (1) "willful, malicious, and knowing" violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*, for denying her transfer request and (2) negligent and reckless violation of the ADA for ignoring her complaints about the harassment from her neighbor. The ADA has multiple provisions, prohibiting discrimination on the basis of disability in different contexts. *See, e.g.,* Title I, 42 U.S.C. § 12112 (prohibiting discrimination in employment); Title II, 42 U.S.C. § 12132 (prohibiting discrimination in public programs). The relevant provision here is Title II, which prohibits exclusion of, or discrimination against, qualified individuals with a disability in the provision of "services, programs or activities of a public entity." *See* 42 U.S.C. § 12132.[3]

Thus, the provision of the ADA under which plaintiff brings her claim prohibits discrimination by "public entities," not by "persons." *See* 42 U.S.C. §§ 12131(1)(B) (defining "public entity" to include "any department, agency, special purpose district, or other

---

[3] Section 12132 reads, in full: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such a disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

5

instrumentality of a State . . . or local government"), 12132.  A housing authority employee is not a "public entity," and therefore cannot be liable under Title II for disability discrimination.  *See Miller v. King*, 384 F.3d 1248, 1277 (11th Cir. 2004) ("the natural meaning of § 12132 is that liability extends only to public entities and not to persons in their individual capacities") (vacated on other grounds); *Leavitt v. Corr. Med. Servs.*, 2009 U.S. Dist. LEXIS 2984, *22 (D. Me. Jan. 13, 2009); *Abbott v. Town of Salem*, 2006 U.S. Dist. LEXIS 4338, *11-12 (D.N.H. Feb. 2, 2006).[4]

Title II is thus similar in that respect to Title I, which does not provide for individual liability in the context of employment discrimination.  *See, e.g., Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *United States EEOC v. AIC Sec. Investigations*, 55 F.3d 1276, 1279 (7th Cir. 1995); *Orell v. UMass Mem. Med. Ctr.*, 203 F. Supp. 2d 52, 64 (D. Mass. 2002).  That is because Title I applies to "employers," not supervisors or agents of employers.  *See AIC Sec. Investigations*, 55 F.3d at 1279.

By contrast, Title IV of the ADA expressly provides for claims against individuals, in their individual capacities, who retaliate against someone attempting to exercise his or her rights under the ADA:  "No *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . "  *See* 42 U.S.C. § 12203(a)

---

[4] In *Kiman v. N.H. Dep't of Corr.*, the First Circuit noted that several courts have determined that Title II of the ADA does not provide for individual liability, although it did not need to reach the issue.  451 F.3d 274, 290 (1st Cir. 2006).  In fact, courts in at least five other circuits have held that Title II of the ADA does not provide for individual liability.  *See Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 557 (D.N.J. 2000) (collecting cases) and *Abbott*, *11 (collecting cases).

(emphasis added).[5]  Thus, when Congress intended to create individual liability, it did so expressly.

In summary, a claim may not be brought under the Title II of the ADA against an individual in his or her individual capacity.  The ADA claim will therefore be dismissed as to defendant Thuot.

### 2.     Claims under the FHA

The Fair Housing Act was amended in 1988 to prohibit discrimination in housing against persons with handicaps.  *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 530 (5th Cir. 1996).  The statute provides in relevant part as follows:

> It shall be unlawful . . . to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap.

*See* 42 U.S.C. § 3604(f)(1).

Under some circumstances, public housing officials can be personally liable for violations of § 3604.  *Meadowbriar*, 81 F.3d at 531.  Such an official must have "the authority and power" to refuse to rent, or otherwise make available or deny, a dwelling unit.  *Id.*  "In other words, the official must be in a position to directly effectuate the alleged discrimination."  *Id.*

The complaint appears to allege that defendants should have granted her request to transfer to another apartment as an accommodation to her handicap and that their refusal to do so violates the FHA.  Specifically, the complaint alleges that plaintiff was handicapped, in the form of multiple sclerosis, depression, anxiety, and post-traumatic stress disorder.  (¶¶ 4, 5).  It does not directly allege that Thuot knew she was handicapped; however, liberally construing the complaint

---

[5] *But see Davis v. UPS*, 2003 U.S. Dist. LEXIS 8547, *6-7 (D.N.H. May 16, 2003) (finding that § 12203 does provide for individual liability, but not in the employment context; there is no valid claim under § 12203 against a supervisor, in his individual capacity, who retaliates against an employee).

and its incorporated documents, an allegation may be reasonably inferred that he was aware of her handicap no later than August 28, 2007, the date of the letter from the neurologist stating that she had multiple sclerosis. The complaint likewise does not directly allege that the purpose of the requested transfer was to address her disability; again, however, liberally construing the complaint, an allegation may be reasonably inferred that she was seeking a transfer to reduce stress in order to mitigate the effects of her handicap. Finally, the complaint does not directly allege that Thuot refused the transfer on the basis of her handicap, but that claim can be reasonably inferred from the complaint as a whole.

In short, the complaint may be reasonably construed to allege a claim of discrimination against Thuot under the Federal Housing Act. Whether the evidence is sufficient to sustain such a claim is, of course, a question for another day, but the claim is sufficient to survive a motion to dismiss.

There remains the question whether Thuot is entitled to qualified immunity as to any suit arising from the refusal to transfer plaintiff to a different apartment. The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question is whether the right at issue was "clearly established" at the time of defendant's alleged violation. *See Pearson v. Callahan*, 2009 U.S. Lexis 591 at *16 (January 21, 2009).

On the present record, which consists of little more than a bare-bones complaint drafted by a *pro se* plaintiff, the Court cannot determine whether Thuot is entitled to qualified immunity for his actions undertaken on behalf of the Housing Authority. Indeed, the Court cannot even

determine what conduct he engaged in, much less assess it against the objective standard of *Harlow v. Fitzgerald*. Accordingly, the Court will not dismiss the complaint based on the doctrine of qualified immunity at this stage of the proceeding.

In summary, the motion to dismiss for failure to state a claim will be denied as to the claim against Thuot under the Federal Housing Act, 42 U.S.C. § 3604(f)(1).

### 3.     Claim of "Transfer for Good Cause"

Plaintiff contends that "HUD" allows tenants to transfer to another unit for any "good cause." The Court assumes that she is referring to the Massachusetts Department of Housing and Community Development regulations, 760 C.M.R. § 5.03 *et seq.* Those regulations grant housing authorities some discretion in balancing the varying needs of tenants with the availability of living units, and provides procedures for transfers. Among other things, the regulations define a "transfer for good cause" as a

> transfer of a household from one unit to another because . . . there is a compelling and documented medical impairment which could be substantially improved by transfer to another available unit.

*See* 760 C.M.R. § 5.03.

It appears that under the regulations tenants may have the right to request transfers, and to certain procedures in connection with such requests. The Court is not aware, however, of any statute or regulation granting Housing Authority residents a legally enforceable right to a transfer in addition to whatever rights they may have under the anti-discrimination laws. Furthermore, even if such a right exists, there is no basis to imply a right against an individual Housing Authority employee. The claim under "HUD" regulations for denying the requested transfer will therefore be dismissed as to Thuot.

### 4. **Negligence**

Plaintiff alleges generally that defendants were "negligent." It is not clear what acts or omissions she is referring to with this charge. Negligence ordinarily refers to a claim that the plaintiff suffered personal injury or property damage due to defendant's failure to exercise the care that a reasonably prudent and careful person would use under similar circumstances. *See* BLACK'S LAW DICTIONARY 1032 (6th ed. 1990). No such injury or damage is alleged in the complaint.

Furthermore, and in any event, employees of Massachusetts public employers are immune from liability for negligent acts committed within the scope of their office or employment. *See Jackson v. Town of Milton*, 41 Mass. App. Ct. 908 (1996) and Mass. Gen. Laws ch. 258, § 2. A housing authority is a public employer for the purposes of chapter 258. *See Commesso v. Hingham Housing Authority*, 399 Mass. 805, 807 (1987) (superseded by statute on other grounds, as explained in *La Grant v. Boston Housing Authority*, 26 Mass. App. Ct. 905, 906 (1998), which was itself reversed on other grounds). As an employee of the housing authority, Thuot is not personally liable for acts of negligence he commits in the course of his duties. Accordingly, the negligence claim against Thuot will be dismissed.

### 5. **Nuisance**

The complaint includes a nuisance claim against the defendants, apparently for failing to abate the behavior of plaintiff's neighbor. A cause of action for nuisance exists where a property owner creates or permits a condition or activity on his property that causes substantial and unreasonable interference with another person's use and enjoyment of their own property. *Morash & Sons v. Commonwealth*, 363 Mass. 612, 616 (1973). Thus, a nuisance claim requires

two separately owned parcels of real property.  *Doe v. New Bedford Hous. Auth.*, 417 Mass. 273, 288-289 (1994).  Thuot is not alleged to own any property on which there is a condition or activity that interferes with plaintiff's enjoyment of her apartment.

If plaintiff's nuisance claim against Thuot is because she believes Thuot is her landlord or an agent of her landlord, the claim still fails.  As a general matter, "a tenant cannot sue [her] own landlord for a nuisance on the property that the tenant rents from the landlord."  *Id*.  "A suit for breach of the covenant of quiet enjoyment is the proceeding a tenant may bring against [her] landlord for interference with the use and enjoyment of the rented property."  *Id* at 289.  The nuisance claim against Thuot will therefore be dismissed.

### 6. **Breach of the Covenant of Quiet Enjoyment**

The covenant of quiet enjoyment protects a tenant's freedom from interference with her tenancy if the interference is significant enough to "impair the character and value of the leasehold."  *Andover Hous. Auth. v. Shkolnik*, 443 Mass. 300, 311, n.17 (2005); Mass. Gen. Laws ch. 186 § 14.  A landlord (including a public housing authority) may be liable for a third party's breach of a tenant's quiet enjoyment, if the breach is a "natural and probable consequence of what the landlord did, what he failed to do, or what he permitted to be done."  *See Doe*, 417 Mass. at 285.  Among other things, a landlord may be liable for failure to take action against a tenant whose excessive noise breaches other tenants' quiet enjoyment.  *See Shkolnik*, 443 Mass. at 311.

Thuot, however, is not plaintiff's landlord.  A claim for breach of the implied covenant of quiet enjoyment is essentially a contract claim.  *See Burofsky v. Turner*, 274 Mass. 574 (1931); *Dyecraftsmen, Inc. v. Feinberg*, 359 Mass. 485, 489 (1971).  The covenant of quiet enjoyment is a implicit term in every lease.  *Brock v. Lorenzo Pitts, Inc.*, 1991 U.S. Dist. LEXIS 21189, *5 (D.

Mass. June 7, 1991). The lease here is between plaintiff and the Housing Authority, Thuot is not a party to the lease, and thus cannot be sued under it. Whatever claims plaintiff may have against the Housing Authority for breach of the covenant do not extend to the landlord's employees and agents in their personal capacity. Accordingly, her claims for breach of the covenant of quiet enjoyment will be dismissed as to defendant Thuot.

### IV. Conclusion

The motion to dismiss by defendants Hill, Pacetti, and Thuot is:

GRANTED as to defendants Pacetti and Hill;

GRANTED as to defendant Thuot with respect to the claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12131(1)(B), 12132; the claim under HUD regulation for failure to transfer for good cause; the claim of negligence; the claim of nuisance; and the breach of covenant of quiet enjoyment claim; and

DENIED as to defendant Thuot with respect to the claim under the Fair Housing Act, 42 U.S.C. § 3604(f)(1).

**So Ordered.**

    /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: March 24, 2009